OPINION
SMITH, Circuit Judge.
Appellant Josh Medina was convicted of several crimes in connection with a string of robberies. He now appeals the District Court’s denial of his motion for a new trial, Fed.R.Crim.P. 33, which was based on an alleged Brady violation, Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The evidence Medina accuses the government of failing to disclose, certain statements made by his co-conspirators to the government during the investigation, was not material because Medina was able to elicit the same statements from the co-conspirators on cross-examination. Because the alleged Brady violation fails, we will affirm the District Court’s denial of Medina’s motion for a new trial.[1]
I.
Medina and five other individuals were charged with a string of robberies that took place in 2004.[2] All defendants except Medina pled guilty to some or all of the robberies. Medina opted to proceed to trial and the government presented evidence against him suggesting that he drove the getaway car and acted as lookout for the robbery of a laundromat, and that his gun was used in that robbery. On July 19, 2007, a jury convicted Medina of (1) conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951, (2) Hobbs Act robbery, 18 U.S.C. § 1951 and § 2, and (3) possession of a firearm in furtherance of a crime of violence, 18 U.S.C. § 924(c) and § 2.
On July 20, 2007, Medina moved for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.[3] He argued that the government committed a Brady violation by withholding statements made to investigators by two of his co-conspirators, George Rivera and Jacqueline White, in which they denied their involvement in *274 certain robberies. Rivera denied involvement in the robbery of a deli and White denied involvement in the robbery of a self-storage facility. Medina contended that these statements had significant impeachment value against another co-conspirator, David Roman, who testified at trial that Rivera was present at the deli robbery and that White was present at the self-storage facility robbery.
The District Court concluded that Medina’s motion lacked merit because he was not prejudiced by the non-disclosures. At trial, Medina repeatedly challenged the credibility of Rivera, Roman, and White and “[h]ad the government properly disclosed [Rivera and White’s statements] prior to trial, it [was] highly improbable that [Medina] could have called the witnesses’ credibility into greater question.” Accordingly, the District Court denied Medina’s motion. Medina now appeals that denial.
II.
The sole issue to be decided in this appeal is whether the District Court correctly denied Medina’s motion for a new trial based on an alleged Brady violation. “Ordinarily, we review a denial of a motion for a new trial under an abuse of discretion standard.” United States v. Joseph, 996 F.2d 36, 39 (3d Cir.1993). “However, when a Brady violation is alleged ... we review the district court’s legal conclusions on a de novo basis and its factual findings under the clearly erroneous standard.” Id.; United States v. Pelullo, 399 F.3d 197, 202 (3d Cir.2005); United States v. Hill, 976 F.2d 132, 134 (3d Cir.1992); United States v. Perdomo, 929 F.2d 967, 969 (3d Cir.1991).
To establish a violation under Brady, “a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment.” Pelullo, 399 F.3d at 209 (internal quotation marks omitted). “Evidence is material if there is a reasonable probability that, had [the evidence] been disclosed, the result of the proceeding would have been different.” United States v. Perez, 280 F.3d 318, 348 (3d Cir.2002), cert. denied, 537 U.S. 859, 123 S.Ct. 231, 154 L.Ed.2d 98 (2002).
Even assuming that the first two requirements of a Brady violation were satisfied, Medina has not shown that Rivera and White’s statements were material to his guilt or punishment. See Pelullo, 399 F.3d at 209; see also Perez, 280 F.3d at 348. Medina argues that the contradictions between Rivera and White’s statements to the government and Roman’s testimony could have been used to show that one or more of these witnesses lied. This exact point, though, was made at trial.
On cross-examination by Medina’s counsel, White denied involvement in the self-storage facility robbery.[4] Roman, however, testified that White was involved in that robbery.[5] The same was true for Rivera — -Roman claimed Rivera was involved in the deli robbery, Rivera claimed *275 he was not.[6] During closing, Medina’s counsel attacked the credibility of all three witnesses. He pointed out that Rivera and Roman’s testimonies conflicted:
George Rivera. They’ve charged him with participating in the robbery of the Emerald Deli[.] And now you see a consistent pattern here of who’s willing to lie on the stand. I said, well, Mr. Rivera, didn’t you commit that with Evil Vargas and David Roman? He had the audacity to tell you no. Well, both can’t be true, because Roman’s saying he committed it with [Rivera.]
He also asserted that White’s testimony regarding the self-storage facility showed that either White or Roman were lying:
Jackie [White] is charged with robbing the Philly Self Storage. I asked her, I said, you robbed Philadelphia Self Storage with David Roman and Evil Vargas. I didn’t. I didn’t. Not me, that case is still under investigation. Well, didn’t David Roman say that, oh, it was Jackie [White] who robbed that with me? So, [the government’s] witness that [it] wants you to trust beyond a reasonable doubt, we know either Roman’s lying or she’s lying. I don’t know what story is true, but the fact that there is more than one story is a reasonable doubt.
Based on the record, we cannot say that the disclosure of Rivera and White’s statements to the government would have changed the result of the proceeding because Medina elicited similar statements from the two witnesses at trial. See Perez, 280 F.3d at 348. Medina was able to point out the inconsistencies between Rivera and White’s testimonies denying involvement in certain robberies and Roman’s testimony stating that the two were involved in those robberies without the statements Rivera and White made to the government. The jury was informed of those inconsistencies repeatedly by Medina’s counsel, yet still convicted Medina. “[T]he government ma[de] [the] Brady evidence available during the course of [the] trial in such a way that [Medina] [wa]s able effectively to use it[.]” United States v. Johnson, 816 F.2d 918, 924 (3d Cir.1987). Thus, “due process [wa]s not violated and Brady [wa]s not contravened.” Id. Medina used the inconsistencies between the co-conspirators’ testimonies to suggest that at least one of them was lying. The jury was simply not persuaded by that argument.[7]
*276 III.
Even assuming that Rivera and White’s statements were improperly suppressed by the government, Medina has failed to show that there was a reasonable probability that the result of the proceeding would have been different had those statements been disclosed. Therefore, we will affirm the District Court’s denial of Medina’s motion for a new trial.

.The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

. Because we write only for the parties, we will presume knowledge of the record and recount the facts only briefly.

. Several months later, on November 8, 2007, Medina amended his motion for a new trial. For purposes of this opinion, all references to Medina’s motion are references to his amended motion.

. White testified as follows:
Q: Well, the Government has agreed to withdraw the charges for the Philadelphia Self-Storage, is that right?
A: Which they should cause I didn't do it.

. On cross-examination by Medina’s counsel, Roman testified as follows:
Q: And the Philly Self Storage, that was when Jacqueline White drove you and Evil to that place to rob and that was the day it was raining, correct?
A: Correct.

. On cross-examination by Medina’s counsel, Rivera testified that he was not involved in the deli robbery:
Q: The June 28th, 2004, robbery of Emerald Deli, you [were] charged with that, correct?
A: Yes.
Q: Okay. And, in fact, you took part in that, correct?
A: No.
On direct examination by the government, Roman contradicted Rivera's testimony:'
Q: Could you continue to explain what took place [during the deli robbery]?
A: This time my friend, we use his car this time. George Rivera. We call him Gono. I called him up, because we needed a driver. This time I went into the business with Eville Vargas to rob them and he drove the van.

. Medina's argument that the non-disclosure of Rivera and White's statements to the government prevented him from challenging the credibility of the government’s prosecution fails for the same reason. Medina successfully questioned the government’s prosecution at trial by challenging each co-conspirator's testimony and pointing out that some of the co-conspirators benefitted in their plea agreements by cooperating with the government. For example, during closing, Medina's counsel said:
I asked Agent Majarowitz, I said, is it fair to say, Agent Majarowitz, that all the information that they used to identify people who were involved in these robberies came from — and they said he was the — one of the first people in — came from your interviews with Jackie [White]? That's correct. What *276 if there's misinformation than what's given? What if David Roman and someone else aren't telling the truth? David Roman is not telling the truth, because I don’t know which truth you're supposed to believe, did George Rivera help him or didn't he? Did Jackie Wright help him or didn’t s[he]? Because she said she didn't and he says she did. Is he involved or wasn't he?
Medina’s whole strategy at trial was to undermine witness credibility, which, in effect, questioned the credibility of the government's prosecution.